WILLIAM L. WEST v. FIRST STATE BANK OF MENTOR.[1]

March 7, 1924.

No. 23,806.

**Verdict against bank acting as gratuitous bailee sustained, when defense was loss by burglary.**

In a suit against a bank as the gratuitous bailee of war savings stamp certificates, plaintiff made a prima facie case by showing defendant's failure to return. The defense was loss in a burglary, but there were contradictions in the evidence for defendant and the jury was at liberty to reject it. Its credibility was for them. Verdict for plaintiff sustained.

Action in the district court for Polk county to recover $500. The case was tried before Watts, J., who when plaintiff rested denied defendant's motion to dismiss and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $475. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Grady & Fosmark*, for appellant.

*W. E. Rowe*, for respondent.

STONE, J.

Action to recover the value of certain war savings stamp certificates left by plaintiff with defendant for safe keeping under circumstances considered below to have constituted the latter a gratuitous bailee. There was a verdict for plaintiff. Defendant

[1]Reported in 197 N. W. 850.

appeals from the denial of its blended motion for judgment notwithstanding the verdict or a new trial.

The sole question is as to the sufficiency of the evidence to sustain the verdict.

About 1:30 a. m. of September 20, 1922, defendant's banking house was burglarized. It was a pretty thoroughgoing job—so well executed that when it was over, the vault and money safe were completely wrecked, all the cash gone and the trail of the raiders so well covered that they have never been apprehended.

The savings stamp certificates with a certificate of deposit, also the property of plaintiff, were in an envelope which was kept in the money compartment of the safe. The litter from the explosions which wrecked the vault and safe was cleared up the morning after the burglary. All of the papers that had been scattered around the floor and elsewhere, were placed temporarily in a shallow wooden box. The papers were sorted later and put back in their proper places, as defendant's officers and employes found time for the work during several days following the burglary.

Plaintiff's loss, according to the testimony for defendant, was not discovered until the sixth day after the burglary, when they found the envelope, soiled and scorched, but without its contents, in the box with other papers that had been scattered around by the explosions.

The morning after the burglary, defendant's cashier told plaintiff that his papers were intact. The explanation for that unfounded assurance was that the cashier had forgotten that they had been placed in the money box and that he assumed them to be in another receptacle in the vault, the contents of which had not been disturbed. He had forgotten that it was at his suggestion that plaintiff's papers had been put in the money chest a week before the robbery.

Notwithstanding the fact that the two resident officers of defendant knew or ought to have known, when they discovered the scorched and empty envelope, that it had been in the money box, they unfortunately overlooked that fact when they finally notified plaintiff of his loss. He was then told by the cashier, in the presence

of the assistant cashier, that his envelope had been in a vertical document file, the front of which was badly dented, apparently by a fragment from the wrecked safe. The file was shown to plaintiff. He was told that the stamps had been in it and that probably the envelope containing them had been blown out by the explosion, the inference being that the burglars in that way had been given the opportunity of making off with the contents.

The evidence is that, in that conversation several days after the raid, the bankers told plaintiff that the envelope had been found on the floor of the vault in front of the safe the day before, whereas the admitted fact is that it was picked up with the other papers the morning after the burglary, although the loss of its contents was not discovered for a few days.

Finally, at the trial, it was explained by the bankers that the envelope was not in the vertical file at all; that it had been in the money box all the time and that the loss of its contents had been discovered as already explained.

Plaintiff made a prima facie case by proving the bailment and defendant's failure to return. Davis v. Tribune Job-Printing Co. 70 Minn. 95, 72 N. W. 808. The case for defendant consisted of the proof of the burglary and the evidence of the cashier, his assistant and other persons who participated in cleaning-up the premises afterwards.

In rebuttal, plaintiff adduced proof of the conversations with defendant's officers. First, he told of the initial assurance that his papers had not been taken. Then he testified as to the later explanation that they must have blown out of the vertical file, and that the envelope had been found on the vault floor the day before that conversation. The ultimate proof was as stated—the plaintiff's property had not been in the vertical file, but in the money chest. When the envelope was found, the bankers ought to have remembered that it had been there all the time. The assistant cashier admitted having seen it there when he locked the money box the evening before the burglary. Yet, after that, came the admittedly-untrue vertical file explanation. They attribute to inadvertence, the divergence in their several stories.

The cold record seems to exonerate defendant's officers from wrongdoing, negligent or otherwise. But the jury was not satisfied with their explanations. And because the evidence contains the inconsistencies and contradictions briefly referred to, we cannot substitute our impression for the conclusion of the jury, which met with no disapproval from the court below. The evidence is so self-contradictory, and in consequence so inconclusive, as to leave clear room for an honest difference of opinion.

It is a case where, to the triers of the facts, the manner of the explanation of the conflicting statements may have been almost as important as the substance. Its inconsistencies and contradictions are such that, with or without hesitation or evasion by witnesses, defendant's proof might well be considered by a jury as failing in that degree of persuasiveness required to overcome plaintiff's prima facie case. Defendant's evidence, although without express contradiction, and because only of its inherent weakness, was open to rejection, under the rule of such cases as Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015; Grover v. Bach, 82 Minn. 299, 84 N. W. 909 and Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474.

The verdict must stand unless we can hold, as a matter of law, that there is no escape from the conclusion that the stamps were taken by the burglars. If the evidence for defendant led irresistibly to that result, a verdict should have been directed for it. But, because of its contradictions and inconsistencies, the evidence does not compel a determination for defendant. The evidence is such that reasonable minds, especially those of trial judge and jurors, who saw the witnesses and heard them testify, might well reach different conclusions. Hence the verdict should stand.

Order affirmed.