TRI-STATE TRANSFER COMPANY v. HELEN NOWOTNY, ADMINISTRATOR, SUBSTITUTED FOR CHARLES H. REICHENBACH, DECEASED.[1]

December 24, 1936.

No. 30,996.

[1]Reported in 270 N. W. 684.

538

*Bundlie, Kelley & Finley,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondent.

HILTON, JUSTICE.

Appeal from an order denying plaintiff's alternative motion, as amended, for judgment notwithstanding the verdict or for a new trial.

This is an action to recover for the loss sustained from property damage occasioned by a collision between a tractor-trailer unit

owned by the plaintiff corporation, and driven by Leon Thompson, now deceased, and a Ford coach, driven by Charles Reichenbach, defendant's intestate. The accident occurred on a 20-foot paved highway with good shoulders at about 2:15 in the morning of October 3, 1934. There were but two eyewitnesses to the accident who are now available. One was Hollister, an employe of the plaintiff, who was driving another of plaintiff's units and was following the Thompson one at a distance of about 300 feet. The other was Gustave Brockhoff, a passenger in the Reichenbach car. As admitted by counsel for both parties, the stories of these two witnesses are diametrically opposed. Hollister claimed that the Ford, on its wrong side of the highway, was driven into the right side of the Thompson machine, which was on its right side of the highway, and that both the driver, Reichenbach, and Brockhoff appeared intoxicated. Brockhoff testified that the Ford was on its right side of the highway; that the Thompson unit was on its wrong side thereof; and that it had only one headlight, the one on the right side, functioning as the Ford approached it. The jury returned a verdict for the defendant.

It is claimed by plaintiff that the physical facts are such that the accident could not possibly have happened as outlined by Brockhoff, the principal witness for the defendant, whose story it was necessary to believe in order to justify the verdict reached. Both the car and the truck unit came to a stop south of the center line of the highway, which would be on the truck's right side thereof. Plaintiff argues that this is conclusive evidence that the Ford was on its wrong side of the highway at the time of the impact. Defendant's claim is that the left front side of the Ford hit the left front side of the tractor, as the latter came over from its left (the wrong side of the highway for it) ; that the impact then swung the Ford around so that its right side struck the back part of the trailer, the Ford then turning completely around and behind the unit, ending up on the south shoulder of the highway. Many strange things are likely to happen in an accident of this nature. The head-on collision of a large tractor-trailer unit traveling at a speed of 30 to 35 miles an hour with an automobile traveling at approximate-

ly the same speed is so destructive in its effect that it would be difficult to say as a matter of law that the position of the cars here may be relied upon to such an extent as to show the utter impossibility of the testimony given by the witnesses for either side. It was entirely a question for the jury as to whether the position of the Ford absolutely negatived Brockhoff's story.

Plaintiff points out that there was testimony that tracks similar to those made by the tread of the tire on the left rear wheel of the Ford were clearly evident on the south shoulder of the road and led directly to the place where the Ford came to a rest. That evidence is not conclusive. The front wheel of the Ford was badly bent by the collision and the tire torn almost off it. There was a dispute as to whether the particular track was straight, smooth, or otherwise. It was the jury's province to determine if the track was made by the Ford car, and, if so, whether it conclusively showed the driver of the Ford was entirely to blame for the accident. It is possible that the driver of each car was partly at fault. Such a finding would have been justified by the verdict reached.

Plaintiff argues that the damage to the truck unit was all on its right side and that this is conclusive of the proposition that the accident could not have occurred as related by defendant's principal witness. Pictures were introduced in evidence to substantiate this theory. Immediately after the collision the truck unit burst into flames. All combustible parts were practically destroyed. There were gas tanks on the right side of the unit but none on the left. Plaintiff deduces from this that the truck must have been hit on its right side, where there were gas tanks, for otherwise there would have been no fire. Undoubtedly the force of the collision registered in all parts of the unit. It is not for us to say that the fire would not have started unless the gas tanks had been hit directly by the oncoming Ford. The pictures are not of much help in determining the exact point of impact when it is remembered that the truck was badly burned. Everything considered, it cannot be held that the physical facts are palpably opposed to the jury's findings.

Plaintiff carried insurance with the Northwestern National Fire Insurance Company and had been paid part of its fire loss by that

company. Defendant's counsel on the *voir dire* stated to the members of the jury:

"Now, the Northwestern Fire Insurance Company of Milwaukee, Wisconsin, whose home office is at Milwaukee, Wisconsin, is also interested in the outcome of this action along with the plaintiff. Mr. Kelley [counsel for plaintiff] may want me to suggest or suggest himself that the Anchor Casualty Company of St. Paul is interested in the defense of this action."

The jurors then were asked if any of them were in any way connected with plaintiff's insurance company as policyholders, employes, or as acquaintances of any employes of that company. This was objected to and is assigned as error. It is first claimed that defendant's counsel violated the court's instructions, given in chambers, in mentioning the interest of the Northwestern Fire Insurance Company in the case. It does not so appear. Counsel for defendant stated in chambers to the trial judge after such instruction was given that he was perfectly willing that any statement made by him to the jury as to the interest of the Northwestern Fire Insurance Company should be objected to by plaintiff. To this the court answered "All right," thereby indicating that it assumed defendant's counsel was going to make some such statement. The statement made, standing alone, under certain circumstances, might have been prejudicial. Here it was not. The jury was told that the Anchor Casualty Company was interested in the defense of the action. Surely no prejudice could have resulted from a suggestion to the jury that there was insurance on both sides of the case.

Brown v. Murphy T. & S. Co. 190 Minn. 81, 251 N. W. 5, and Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251, cited by plaintiff, involved different situations. In the former it was brought to the attention of the jury that some of the defendants in that action, a personal injury suit, had insurance, while the other defendants did not. Obviously, if any members on the jury there entertained prejudice against insurance corporations, those defendants being so insured were placed at a disadvantage. The statements of counsel

in the Prescott case with respect to insurance cannot even be compared with those of the instant case. The circumstances were entirely different. Plaintiff suggests that its insurer was not interested in the sense of being liable for any liability but was interested only as a creditor and therefore there was no justification even to mention that company. Nevertheless it still had an interest, for there was an agreement that it would receive a proportionate share of any recovery made by plaintiff.

Defendant called one Morrison as a witness. On direct examination he testified that he saw and observed Reichenbach shortly after the accident and that he was sober. On cross-examination it was brought out that Morrison at another time had stated that he could not tell whether or not Reichenbach was sober. On redirect, defendant's counsel, claiming surprise, was permitted to show that Morrison at other times had made statements consistent with his testimony on direct examination. Clearly this was error.

"Where the adverse party, for the purpose of discrediting a witness, presents evidence that the witness has previously made statements inconsistent with his testimony, it is well settled that the party producing the witness cannot present other statements previously made by him, consistent with his testimony, to offset or overcome the discrediting effect of such contradictory statements." State v. LaBar, 131 Minn. 432, 433, 155 N. W. 211; see George Gorton Machine Co. v. Grignon, Jr. 137 Minn. 378, 163 N. W. 748; Barrett v. Van Duzee, 139 Minn. 351, 166 N. W. 407.

To allow such procedure whenever a witness has been discredited by cross-examination would destroy the usefulness of the latter. However, in this case the error was not prejudicial. There was testimony of several other witnesses that Reichenbach was sober, and even had Morrison not been called there was ample evidence upon which a finding by the jury that Reichenbach was sober could be sustained.

Brockhoff, who, as stated before, was the principal witness for defendant, testified at length as to the manner of the happening of the accident. On cross-examination he was asked if he knew

of an attorney by the name of McDonald, to which he replied in the affirmative. He also admitted that he had retained McDonald. It was then brought out by plaintiff that Brockhoff had commenced an action in the district court of Hennepin county to recover damages for his injuries against both the plaintiff here and Reichenbach. He testified that he told McDonald about his "case." The complaint in that action then was introduced in evidence by plaintiff, without objection and with but a very meagre foundation first having been laid, in order to impeach Brockhoff. The version of the accident as related in that complaint was much different than and contradictory to the version testified to in the trial of this case. In rebuttal defendant called McDonald, who was permitted to testify, over objection, as to what Brockhoff had told him at the time he was retained. McDonald's story lent credence to Brockhoff's testimony here. The information was elicited from McDonald that he had prepared the complaint (which was unverified) on his own initiative and that Brockhoff had not read it and did not even know what it contained. The admission of that testimony is claimed to be reversible error.

There is no dispute but that a pleading in one action may be used as an admission against the same party in another action. 2 Wigmore, Evidence (2 ed.) § 1063, et seq.; Carpenter v. Tri-State Tel. & Tel. Co. 169 Minn. 287, 211 N. W. 463; Bakkensen v. Minneapolis St. Ry. Co. 184 Minn. 274, 238 N. W. 489. Likewise, any statement contradictory to one made by a witness on the stand may be used for the purpose of impeachment. The form or nature of the contradictory assertion is immaterial, i. e., it may be oral or written. 2 Wigmore, Evidence (2 ed.) § 1040. Thus a pleading may be so used, as in the case of admissions. However, the impeached witness may always explain away the inconsistency. See 2 Wigmore, Evidence (2 ed.) § 1044, p. 501. It is possible that the apparent inconsistency may not be the result of dishonesty or poor memory but rather because of a temporary misunderstanding. Plaintiff contends, however, that even if that be true the explanation can only be made by the impeached witness himself and not by a third party. See Dufresne v. Weise, 46 Wis. 290, 1 N. W. 59.

Therefore it is claimed that defendant had no legal right to call McDonald for that purpose. Assuming without deciding that the rule is as contended for by plaintiff, even then it would not necessarily follow that there was prejudicial error in permitting McDonald to testify as he did. Third parties may be called to prove that the purportedly contradictory statement used to impeach the witness was never made. 2 Wigmore, Evidence (2 ed.) § 1045. That is all defendant did here. By introducing the complaint in evidence plaintiff made it appear as if Brockhoff had made the statements therein; but, although it might be presumed that those statements were made by him, evidence could be introduced to rebut it. See Carpenter v. Tri-State Tel. & Tel. Co. 169 Minn. 287, 211 N. W. 463. Plaintiff by introducing the pleading in evidence opened wide the door for testimony to the effect that the pleading actually was not the real utterance of the witness concerned but rather the work of his attorney. McDonald testified as to what Brockhoff actually told him. It should make no difference that he was allowed so to testify rather than to limit his testimony to relating that Brockhoff did not tell him the matters alleged in the complaint. It merely was another way of showing that the statements attributed to Brockhoff were not made by him.

McDonald's testimony was not subject to the objection of the hearsay rule for the reason that no reliance was to be placed in the truthfulness of the statements made to him by Brockhoff. The only point was to find out whether any statements were made and, if so, just exactly what they were. The circumstances surrounding the preparation of the complaint were the source of the information upon which the allegations therein were based and would seem admissible to explain why the pleading was drawn without regard to the version of the interested party.

The other assignments of error all go to claimed misconduct of counsel. To fully recite all of them would unduly extend this opinion. We need do no more than refer to such as seem material. It was emphasized by defendant's counsel, possibly too strongly, that Brockhoff had sustained severe injuries in the accident. Brockhoff was not a party to this action. Plaintiff claims that the

repeated references to those injuries conveyed to the jurors the impression that unless defendant prevailed here (Brockhoff being a witness for defendant) Brockhoff might be hampered in an action he was bringing on his own behalf. We can see nothing prejudicial in the references made. There was absolutely no intimation at the trial that the verdict reached here would in any manner affect Brockhoff's own case.

It is argued that defendant had no right even to bring out the fact that Brockhoff had been injured in the accident. An important issue in the case was whether Brockhoff and Reichenbach were in an intoxicated condition at the time of the accident. There was testimony that Brockhoff was unsteady, mumbled his words, etc., immediately thereafter. It was not error to allow defendant to show that such a condition arose because of his injuries, thus negativing the possibility of some other cause. Further, the matter of Brockhoff's injuries apparently was as much placed before the jury by the plaintiff as by the defendant. The former introduced Brockhoff's complaint in evidence, and in it was a full account of his purported injuries. Certainly there can be no valid objection to defendant's bolstering his own case by making the most of a question partly developed by plaintiff.

In his closing argument counsel for defendant made repeated reference to the fact that counsel for plaintiff had made numerous objections to the admission of testimony. That circumstance was not prejudicial. Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 240 N. W. 359, is not controlling. In it counsel argued facts that were not supported by the record. That was not the situation here. The argument objected to here merely recounted that which actually took place. Such an argument is not inherently wrong.

It is claimed that counsel for defendant in arguing to the jury made improper remarks relative to a statement, secured on behalf of plaintiff prior to the time of the trial, from Morrison, a witness for defendant. The court instructed the jury that the obtaining of the statement was proper. A further statement, made by defendant's counsel subsequent to that instruction, was not material. Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39, presented an

entirely different situation. There counsel "besmirched" the manner in which a similar statement was procured from a witness and inferred that it was dishonestly obtained. None of that is found here.

McMonigal, a witness for plaintiff, testified that Brockhoff had made certain statements contradictory to those he made as a witness on the stand. On cross-examination of McMonigal part of a written statement about the accident, prepared by him the day after Brockhoff assertedly made the claimed contradictory statement, was read to the jury over objection of plaintiff. It is conceded that in the cross-examination of an impeaching witness statements made by the principal witness in connection with or in explanation of the contradictory statements elicited from the impeaching witness are admissible. Here it is claimed that the statements offered exceeded those bounds. On direct examination McMonigal testified that Brockhoff told him that the left front side of the Ford had run into the left front side of the truck unit. The statement objected to, and which was read to the jury, described the position of the cars immediately prior to and as they came together at the time of the collision. Obviously it came within the rule. It qualified and explained Brockhoff's testimony on direct examination and nothing more.

Plaintiff next objects that counsel for defendant asked to see the statement which was the property of plaintiff. Counsel for plaintiff voluntarily handed the statement over to defendant's counsel without any direction from the court. He cannot now very well object to his own action. Even so, it is argued that it was improper for defendant to mark the statement as defendant's exhibit, as was done, and then offer all of it in evidence, as the court, in chambers, had ruled that only part of the statement was admissible. Defendant offered the full statement only for the purpose of getting into the record his exception to the court's ruling that the entire statement was not admissible. There was no error in this. The contents of the statement were not disclosed to the jurors. The offer was made but once. It was not emphasized and would not come within the rule of First Nat. Bank v. Schroder, 175 Minn. 341, 221

N. W. 62, or Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142. In his closing argument defendant's counsel made reference to a colloquy had in the court's chambers. This is assigned as error. There was no attempt to get inadmissible evidence before the jury in that manner so as to bring the case within the facts of Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 240 N. W. 359. The other assignments of error have been examined and found not so material as to affect the determination of this case in any way.

Affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

