JUDITH ELIZABETH WALKER v. ANTON C. STECHER AND ANOTHER.
ROBERT W. WALKER v. SAME.[1]

December 29, 1944.

No. 33,851.

[1]Reported in 17 N. W. (2d) 317.

*Faegre & Benson, Paul J. McGough,* and *John A. McEachron, Jr.,* for appellant.

*William A. Tautges* and *Eugene A. Rerat,* for respondents.

MAGNEY, JUSTICE.

Plaintiffs, wife and husband, recovered verdicts in separate actions against defendants, Anton C. Stecher and Frank Rerat, for injuries growing out of an automobile accident. Stecher appeals from an order denying his alternative motion for judgment or a new trial as to both cases. Rerat did not appeal. The cases have been consolidated on appeal.

Shortly after midnight on February 20, 1943, plaintiff Robert W. Walker was driving his Plymouth sedan easterly on Wayzata Boulevard in the city of Minneapolis. He was accompanied by his wife, plaintiff Judith Elizabeth Walker. Wayzata Boulevard is paved with vitrified brick to a width of 32 feet, with concrete gutters one foot wide. It runs east and west. At the place of accident and to the west of it, there is a two-percent downgrade easterly. As Walker approached Penn avenue, a collision took place between his car and a car owned and operated by Stecher, which was proceeding westerly. After the collision, the front end of the Walker car was headed into the snowbank on the south side of the

highway and the rear end extended out into the highway in a general northwesterly direction. It was so imbedded in the snowbank that it could not be moved. Plaintiffs received some injuries in this first collision. A short time after this accident, which the jury could find was from one to five minutes, defendant Rerat approached from the·west and struck the Walker car, causing plaintiff Judith Walker very serious injuries.

The above is but a brief general description of the setting for these actions. Because of the issues raised on the appeal, it is necessary to make a more detailed statement. Plaintiffs claim that the Walker car was proceeding on its own side of the highway at all times, that the Stecher car "kept coming into the center on the highway over to our side of the road," and that the collision took place on the Walker half of the road, that is, the lane in which they were traveling. Stecher, on the other hand, claims that he was at all times traveling on his own right-hand side of the road, that the Walker car swerved over to his side of the road, and that the collision took place on the Stecher half of the highway. Thus, each driver claimed he was on his own right side of the road. The verdicts of the jury indicate that they found that the collision took place on the Walker side of the highway and that the negligence of Stecher caused the accident. On the conflicting testimony they could well so find. Defendant Stecher in his brief admits that the question of his negligence as to this collision was for the jury.

Although the pavement on Wayzata Boulevard was 34 feet wide, the snowbanks on each side may have encroached on the driving surface to some extent. It was estimated by one witness that the distance between the snowbanks was 26 to 28 feet. All the witnesses agreed that the curb was covered. As has been stated, after the collision the Walker car was nosed into the snowbank on the south side. The back end extended out at an angle of more than · 45 degrees in a general northwesterly direction. The rectangle on Exhibit A, which shows the position of the Walker car, is at an angle about halfway between northwest and north. The Stecher car came to a stop along the northerly curb and parallel to it,

about 25 feet west of the Walker car, and was headed westerly. There was ample room for a car to pass between the Walker car and the north side of the highway; in fact, witness Braden, who came upon the scene of the accident from the east, drove through this space. The highway was slippery and icy in places, due to thawing the day before and subsequent freezing. The center part of the highway was more or less free from ice. The headlights of the Walker car were in the snowdrift. The evidence does not disclose whether or not, at the angle at which the Walker car was standing, its taillights were so located as to be seen by a driver coming from the west. The above was the situation when defendant Rerat approached from the west. His was the first car to come from that direction after the Walker-Stecher collision. Rerat said that he was coming down the two-percent grade and that after he had passed the headlights of the Stecher and Braden cars, which were parked along the north side of the road, he saw a lady in a fur coat standing in front of a car which was across the south lane of the highway. As the Walker car was across the highway, Mrs. Walker was in fact standing alongside the Walker car. Rerat put on his brakes immediately and tried to turn out, but could not do so.

"Q. Which way did you turn?

"A. Tried to turn to the right or left, both.

"Q. You mean your car wouldn't turn either one way or the other?

"A. That is true.

"Q. Was that because you had the brakes set?

"A. Well, I had set on the brake; I applied the brake on and it was slippery; I found out it was slippery and couldn't stop.

"Q. You didn't discover it was slippery until you set the brake?

"A. No, sir.

\* \* \* \* \*

"Q. Couldn't you see that the highway was to some extent slippery or icy?

\* \* \* \* \*

"A. I didn't know it was as slippery until I put my brakes on."

He saw Mrs. Walker and the car at the same time and said, "I seen her in plenty time to stop if I could." Rerat did not see the taillights of the Walker car. He was asked:

"Q. And it will make the taillights shine up, even if the taillights are not lighted, you know that?

\* \* \* \* \*

"A. Well, I couldn't see the taillight because I was coming— the car was not—Walker's car was not in front of me, I mean was in front of me, but this way, the taillight was in a different direction."

Rerat struck the Walker sedan at about the front door and injured Mrs. Walker very seriously. The jury brought in verdicts against both Stecher and Rerat.

Stecher claims that the negligence of Rerat was a superseding cause—a sole, independent, and intervening cause of the accident. He claims that Rerat's conduct so predominates insofar as the second collision is concerned that it must be deemed the sole proximate cause thereof.

The court charged the jury:

"\* \* \* Now, when an accident occurs through the negligent operation of one automobile, although the immediate cause of the accident may be the negligent act of a third party in the operation of his automobile, where a chain of events has been started due to the negligence of the driver of the first automobile, he may be held liable for all mishaps which result in the ordinary course of the natural sequence and that proximately result in harm. That is, was his conduct a substantial factor or material element in creating a chain of events that developed in natural sequence that resulted in the ultimate injury and harm to the person who suffered such injury and harm?"

The paragraph of the charge above quoted followed in part the language of this court in the case of Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849. In that case, defendant Villaume negligently operated his car on a wet pavement 24 feet in width. Plain-

tiff had stopped his car near the edge of the pavement. On approaching the plaintiff, Villaume applied his brakes, but the car skidded and finally came to a stop in a position which made it difficult for others to pass, as the space between plaintiff's car and defendant's car was only about eight feet. Shortly thereafter defendant Anderson came along. He saw the lights of the plaintiff's and of Villaume's cars. As Anderson approached, he swerved and struck plaintiff and his car. The question urged upon the appeal was whether Villaume's negligence was a proximate cause of the injury. He insisted, as does defendant Stecher here, that, if any chain of causation arose between the negligent handling of his car and the injury, it was broken by an efficient intervening cause, in that case the negligence of Anderson.

Here, Stecher insists that the negligence of Rerat was an efficient intervening cause, and that if there was any negligence on his part it had ceased prior to the second collision. This court in the Holmberg case said (158 Minn. 445, 197 N. W. 850) :

"* * * But he [the driver of an automobile] may be held· liable for an accident occurring through the negligent operation of his machine, although the immediate cause of the accident was the negligent act of a third party in the operation of his car, i. e., where a chain of events has been started, due to the negligence of the driver of an automobile, he may be held liable for all mishaps which are properly the proximate result of his unlawful conduct [citing cases]."

In that case, the trial court instructed the jury (158 Minn. 446, 197 N. W. 850) :

"If the car of Villaume was standing across the highway by reason of negligence of Villaume, and. its presence in that position directly contributed to the happening of the subsequent collision of the Anderson car, then it would render the defendant Villaume liable in this case."

It is true that in the Holmberg case the two cars were so close together it would have been difficult for Anderson to pass between

them, and for that reason he swerved as he did. Here, no witness testified that the Walker car extended out into the highway beyond its center. There was, therefore, ample room for Rerat to pass it to the left. Anderson, in the Holmberg case, had, however, seen the lights of the two cars for some distance and still kept going. Here, Rerat saw no lights on the Walker car, which was blocking his lane of travel. The probable reason for this has been stated. The position of the Walker car was such that the lights could probably not be seen by an oncoming car. It had been placed in that position by the negligence of defendant Stecher, taking the testimony most favorable to plaintiffs and the findings of the jury. The highway was slippery and icy, so that when Rerat saw the Walker car he could neither stop nor turn out, and he attempted to do both. Under these facts, it cannot be said that the jury was not justified in finding that a chain of events had been started by Stecher's negligence, so that he may be held liable for the resulting mishap. The position of the Walker car created an extrahazardous road danger, and one likely to cause what did result, *viz.*, a crashing into the Walker car by the first eastbound car coming along after Stecher, by his negligence, had caused the obstruction of the eastbound lane by the Walker car.

Stecher claims that the rule of law as given in the Holmberg case applies only to the facts as found in that particular case and has no application here. He does not question the correctness of the court's statement of the law where applicable. We think the facts here warranted the court in charging as it did. Causation, like negligence, is a fact issue for the jury. In Johnson v. Sunshine Creamery Co. 200 Minn. 428, 432, 274 N. W. 404, 406, where there were two collisions, as here, this court said with reference to an asserted defense that the sequence of events was broken by an intervening independent cause:

"* * * It occurs to us that this would be a jury question and that a jury might find that the negligence of those concerned in the first collision contributed to cause the second. The following cases appear to lead to this conclusion: Holmberg v. Villaume, 158 Minn.

442, 197 N. W. 849; Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 251 N. W. 5; Wedel v. Johnson, 196 Minn. 170, 264 N. W. 689."

As was said in Moores v. N. P. Ry. Co. 108 Minn. 100, 101, 121 N. W. 392:

"* * * Theorize as we may on the subject of proximate cause, it is in its last analysis a question of good common sense, to be solved by a practical consideration of the evidence in each particular case."

In this case, a jury could find on the evidence that a chain of events was started by Stecher's negligence, which in the ordinary course of the natural sequence of events was the proximate cause of the injury to Mrs. Walker. It could well find that Rerat's negligence was not a sole, independent, and intervening cause—a superseding cause; that is, that his negligence was not an independent cause which so predominated as a cause of the injury that Stecher's negligence ceased to be a substantial factor in causing it.

Stecher also complains that the instructions given were incomplete, misleading, and highly prejudicial, in that the court failed to let the jury know that an efficient intervening or superseding cause would break the chain of events leading up to the ultimate injuries to Mrs. Walker. The court charged the jury that where a chain of events has been started because of the negligence of a driver of an automobile, he may be held liable for all mishaps which result in the ordinary course of the natural sequence and that proximately result in harm. Counsel failed to call the court's attention to what he now claims is misleading and prejudicial. He made no request to the court to have it charge on the rule of independent, efficient, and intervening cause, and in his motion for a new trial made no mention of it.

■ Stecher also claims error in this language of the charge on concurrent negligence:

"Now, when two or more persons through their negligence cause harm concurrently, then the law is that if their negligence, con-

current negligence, was a material factor or substantial element bearing directly upon the resultant harm, then they are both responsible for all the harm, loss and damage that ultimately flows and results from that concurrent negligence."

In the motion for a new trial, no specific complaint is made to this part of the charge. At the conclusion of the charge, the only objection made to the submission of the question of concurrent negligence was that the facts in the case did not justify its submission. Aside from this, what we have said on the question of causation and what may be termed the "chain of events" feature of the charge disposes of the question now raised. The inaccuracy, if any, in this part of the charge affects defendant Rerat only, and he is not appealing.

■ Stecher also claims that plaintiffs were guilty of contributory negligence as a matter of law. The Walker car was not intentionally placed in its dangerous position on the highway. Mrs. Walker was injured in the first collision to an extent which affected her both mentally and physically. We have examined the record carefully and determine that the question of contributory negligence was one for the jury and that it was properly submitted.

■ Stecher charges misconduct on the part of plaintiffs' counsel in cross-examining him and one of his witnesses. It is evidence that counsel was trying to inject something into the case so as to induce the jury to find in plaintiffs' favor because of prejudice and not on the merits. The court sustained objections at the time of questioning and admonished the jury, as was requested. It apparently found the improper questioning not so prejudicial as to necessitate a new trial. If an attorney has a case which he thinks has merit, we cannot understand why he should pursue a course of questioning or of argument which would present to this court a record which might result in prejudice to his client. The trial court refused to grant a new trial on this ground, and with reluctance we hold that it was not in error in so doing.

The appeal raises other questions. We have not overlooked them but deem it unnecessary to discuss them. They present no errors.

Order affirmed.

LORING, CHIEF JUSTICE (concurring specially).

With considerable reluctance I concur in the result. Whether the situation set up as a result of the Stecher-Walker collision created such a dangerous situation as, in natural sequence, to prompt Rerat to swing to the right and strike plaintiff is the serious question in the case. The jury found him negligent and so rejected his theory of the facts. That the Braden car passed safely between the Stecher and Walker cars is strong evidence that with ordinary care Rerat could and should have done the same thing in the opposite direction. In the Holmberg case, there were but eight feet left between the two cars involved in the first collision, and the pavement was but 24 feet wide. Thus (158 Minn. 446, 197 N. W. 850), "an extremely dangerous situation" was set up by the first collision. That result of the first collision is not so plain in the case at bar, and my concurrence is based upon the theory that, in view of the road conditions, whether the evidence justified an inference that a situation was set up which naturally prompted Rerat's action, and not solely his own negligence, was a question of fact for the jury. Thus only can the sequence of events from the first collision to the final injury be deemed unbroken.

I think it is time that this court rejected "substantial factor" and "material element" as adequate definitions of proximate cause. They are definitions that need defining and which, if unqualified, are likely to confuse, if not mislead, a jury into including remote causes and mere conditions as proximate causes. Restatement, Torts, § 431, *et seq.*, recognized the inadequacy of the "substantial factor" definition by following it with a great number of qualifications in subsequent sections.

In the case at bar, the trial court recognized the inadequacy of the "substantial factor or material element" theories of defining proximate cause and elaborated them by submitting the question whether defendant Stecher's conduct "created a chain of events that developed in natural sequence that resulted in the ultimate injury." This substituted "natural sequence" for the "consequences which follow in *unbroken sequence, without an intervening efficient*

*cause"* of Justice Mitchell's definition in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641. No better definition of proximate cause than Justice Mitchell's has ever been formulated, but counsel's objection was to submitting the question of "the chain of events" to the jury; not to the tenor of the charge. If he was dissatisfied with the tenor of the charge he should have then called the court's attention to the omission by requesting the proper instruction.

STREISSGUTH, JUSTICE (concurring specially).

I join in the special concurrence of the Chief Justice.

