# MARVIS BIELINSKI v. JAMES H. COLWELL, SPECIAL ADMINISTRATOR OF ESTATE OF GEORGE HARVIE.[1]

June 11, 1954.

No. 36,232.

[1]Reported in 65 N. W. (2d) 113.

*William H. Howard,* for appellant.

*Henry Halladay, Curtis L. Roy,* and *Dorsey, Colman, Barker, Scott & Barber,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for the wrongful death of Bernard A. Bielinski, instituted by his special administratrix, against the special administrator of the estate of George Harvie. Bernard A. Bielinski and George Harvie both met death on September 29, 1950, at about 7:40 p. m. at the intersection of State Highway No. 52 and County Highway No. 10, Hennepin county, as the result of an accident there in which a truck driven by Harvie collided with a car driven by Bielinski. For convenience Bernard A. Bielinski will be referred to as the plaintiff and George Harvie as the defendant.

The jury returned a verdict in favor of plaintiff's administratrix in the sum of $10,000. This is an appeal from an order of the trial court granting the motion of defendant's administrator for judgment notwithstanding the verdict. The trial court based its order therein on the ground that the evidence did not support a finding of negligence on the part of defendant and established plaintiff's contributory negligence as a matter of law.

At the time of the accident plaintiff was driving a 1940 two-door Ford sedan northerly on Highway No. 52 approaching the intersection of Highway No. 10, also known as the Bass Lake road. About the same time defendant was operating a 1950 Ford truck

southerly on Highway No. 52 toward the same intersection. While plaintiff was negotiating a left turn to go west on Highway No. 10, the right front of his car collided with the left front of defendant's truck at a point near the west line of Highway No. 52 just north of the south line of Highway No. 10 extended across the intersection. Plaintiff's car was moved or pushed back in front of the truck a distance of almost 134 feet to the south, coming to rest there in the center of Highway No. 52. The truck continued approximately 81 feet south of the point of collision and came to rest on its side in a ditch on the west side of Highway No. 52.

Highway No. 52 is a four-lane tarvia-surfaced arterial highway 50 feet in width running generally northerly and southerly. It is divided into four clearly marked lanes of traffic with a double line in the center. It is zoned under our statutes for 50 miles per hour. M. S. A. 169.14, subd. 2(3). Highway No. 10 is a 24-foot two-lane highway running generally westerly and easterly and intersecting Highway No. 52 approximately two miles north of Robbinsdale. It is also tarvia covered. Stop signs require that vehicles thereon come to a stop before entering Highway No. 52. There are no obstructions to the views of drivers approaching or crossing this intersection, the structures adjacent thereto being set back some distance from the highway. At the time of the accident the intersection was lighted by a street light extending from a pole in the southwest corner thereof. There was no traffic in the immediate vicinity. Rain had fallen intermittently throughout the afternoon, and it was misty and raining at the time of the collision so that the highways were wet as a result. The driving lights of both cars were lighted. Plaintiff's car, a 1940 Ford, was not required to be equipped with lights for mechanical signaling.

The principal evidence submitted on behalf of defendant was the testimony of John Walker and Edgar Quistad. Mr. Walker, who was standing at an oil station northeast of the intersection and about 100 feet north of the north line of Highway No. 218, testified that when he first observed defendant's truck it was in the westerly lane of Highway No. 52 about 40 feet from the intersection; that he

watched it for a distance of approximately 50 feet before the impact; that its speed when he first observed it was "at least 50 miles per hour"; that the screeching of its brakes called it to his attention; that after the collision plaintiff's car was knocked backward and ended up just north of the direct service station southeast of the intersection; that the truck made a half turn and ended up facing north in the ditch almost in front of the dairy bar southwest of the intersection; and that the skid marks of the truck which he observed shortly after the accident were approximately 100 feet distant from their beginning to the point of impact.

Mr. Quistad testified that he was the owner of a dairy bar and restaurant southwest of the intersection, back some 130 feet from the west line of Highway No. 52; that just prior to the accident he was looking through the windows of this establishment toward Highway No. 52 and saw plaintiff's car traveling northerly thereon approaching the intersection at about 15 miles per hour; that it was in the inside or left of the two northbound lanes; that he was able to observe it while it traveled approximately 90 feet; that thereafter the corner post of his restaurant blocked it from his view; that he heard the impact of the collision but did not see the cars come together; and that after the collision defendant's truck came to rest opposite the door of his establishment.

■ We are compelled to disagree with the trial court's conclusion that the evidence is too speculative and conjectural to support a finding of negligence against defendant. We believe it is such that the jury may well have concluded that defendant was traveling in excess of the 50 miles per hour as authorized by the statute and that such speed constituted negligence proximately causing the accident. § 169.96; Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526; Rue v. Wendland, 226 Minn. 449, 33 N. W. (2d) 593; Flitton v. Daleki, 216 Minn. 549, 13 N. W. (2d) 477; Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409.

Mr. Walker estimated defendant's speed at 50 miles per hour after his truck had already skidded approximately 50 feet and while it still had 50 feet to travel before coming in contact with plaintiff's

car. It is reasonable to infer from this, as well as from the screeching of defendant's brakes or tires, that the skidding was the result of defendant's effort to cut down his speed by the application of his brakes. If his speed was still 50 miles per hour after application of his brakes for a distance of 50 feet, the conclusion is almost inescapable that prior to the time when he was first observed by this witness his speed must have been substantially in excess of the 50 miles per hour estimated by the witness. The fact that the application of the brakes reduced the speed of defendant's truck is further supported in some measure by Glenn Swanson, called on behalf of defendant, who testified that at a distance of 25 feet from the point of contact defendant's speed was about 40 miles per hour, indicative that the application of brakes was gradually reducing the speed of the truck. Further, the position of the cars when they came to rest after the accident would lend support to a finding that defendant's truck must have been traveling at an excessive rate of speed as the impact was so violent that it caved in the entire right side of plaintiff's car and pushed it back in the direction in which it had traveled some 134 feet while defendant's truck continued on some 81 feet before it came to a stop.

Such testimony and such factors would give ample support to a jury finding that defendant's speed was so excessive as to constitute negligence and that such negligence was the proximate cause of the accident. Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Russell v. Winters, 185 Minn. 472, 241 N. W. 589.

■ It further appears to us that § 169.14, subd. 3, which requires reduced speed for vehicles approaching and crossing an intersection, or when special hazards exist with respect to traffic or by reason of weather or highway conditions, is applicable here. The record indicates that at the time of the accident rain was falling and the weather was misty; that it had rained intermittently throughout the day, and as a result the highway was wet and the pavement was "shiny with the water." Such facts would seem sufficient to support a finding that because of special hazards with respect to weather

and highway conditions defendant should have reduced his speed while approaching the intersection; that a speed of 50 miles per hour was hence unlawful; and that hence his failure to drive at a lesser speed constituted negligence.

It is true that we have held that the presence of an intersection in itself does not invoke this statutory requirement where an arterial highway is involved. Neal v. Neal, 238 Minn. 292, 56 N. W. (2d) 673. However, in that case there were no special hazards such as those present here which otherwise called for the cautionary reduction in speed specified in § 169.14. Normally, whether such special hazards exist is a fact question for the jury. Hatley v. Klingsheim, 236 Minn. 370, 53 N. W. (2d) 123; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31. Here, if the jury determined they did exist, it might well conclude that a speed of 50 miles an hour was evidence of negligence proximately causing the accident.

■ The burden of establishing plaintiff's contributory negligence rested upon defendant. There is no evidence that plaintiff was driving at an excessive rate of speed; that his car was not under proper control; or that he failed to signal as required by statute. The trial court was of the opinion, however, that his actions in making a left turn in front of defendant's oncoming truck were such as to establish his contributory negligence as a matter of law, relying on Tschida v. Dorle, 235 Minn. 461, 51 N. W. (2d) 561.

In the Tschida case, where the defendant's actions in making a left turn in front of an oncoming vehicle were held to be evidence of his negligence as a matter of law, defendant by his own testimony had admitted that at the time of the accident he had operated his vehicle in violation of the provisions of § 169.19 relating to left turns and § 169.18, requiring that vehicles be driven upon the right half of the highway.

Here there is no testimony that plaintiff violated such statutes or was otherwise negligent in the manner in which he made the left turn. On the contrary, there is evidence that he approached it at a lawful and much reduced rate of speed; that he was traveling in his left or inside lane preparatory to making the turn as required; and

that he did not make it abruptly in the pathway of the oncoming truck but rather on a gradual basis which defendant could not have failed to observe.

It is true that § 169.20, subd. 2, requires the driver of a vehicle intending to make a left turn at an intersection to yield the right of way to a vehicle in the intersection or so close thereto as to constitute an immediate hazard. There is no evidence which would support the conclusion that plaintiff acted in violation of this statute as a matter of law. It is clear from the evidence submitted that defendant was not in the intersection when plaintiff commenced his left turn. As to whether defendant was so close thereto as to constitute an immediate hazard in view of all the surrounding circumstances would seem to be a question for the jury. The weather, the rain, the mist, and the wet and "shiny" pavement may have made it appear to plaintiff, when he commenced his left turn, that defendant was not so close to the intersection as to constitute an immediate hazard. He had a right to assume that defendant would drive at a lawful rate of speed, would keep his truck under control, and would maintain a careful lookout in view of the prevalent conditions. He may have determined that because of the obligations thus imposed upon defendant there was ample time for him to make the left turn before defendant arrived at the intersection. We do not feel that plaintiff's failure to anticipate that defendant would approach the intersection in violation of the regulations described constituted negligence as a matter of law. It is only where the evidence of contributory negligence is so clear and conclusive as to leave no room for differences of opinion amongst reasonable men that a court may enter upon the province of a jury in determining this issue. Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357; Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. (2d) 812; Eklund v. Kapetas, 216 Minn. 79, 11 N. W. (2d) 805; Walker v. Stecher, 219 Minn. 152, 17 N. W. (2d) 317; Packar v. Brooks, 211 Minn. 99, 300 N. W. 400.

We are satisfied that this issue was one for the jury's determination and that the trial court was in error in holding that it established negligence as a matter of law.

The order appealed from is reversed.

Reversed.