INEZ CARPENTER, NOW THEIS, A MINOR, BY STEPHEN
CARPENTER, HER GUARDIAN *ad litem,* v.
ERWIN L. BIRKHOLM AND ANOTHER.
STEPHEN CARPENTER v. SAME.
BERNHARDT REITZ v. E. L. BIRKHOLM AND ANOTHER.
E. L. BIRKHOLM AND ANOTHER v. CHICAGO TRAILER
TRANSPORT, INC.[1]

June 18, 1954.

Nos. 36,253, 36,254, 36,259, 36,260, 36,261, 36,262.

[1]Reported in 65 N. W. (2d) 250.

380

*Charles H. Weyl* and *Young & McClure*, for appellants Reitz and Chicago Trailer Transport, Inc.

*Carroll & Thorson*, for respondents-appellants Theis and Carpenter.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II, D. W. Nord*, and *Powrie & Davis*, for respondents Birkholm.

DELL, CHIEF JUSTICE.

Four negligence actions were consolidated for trial. For convenience and clarity the plaintiffs and defendants will be referred to by name. There was a verdict for Inez Carpenter Theis for $12,500 and one for Stephen Carpenter for $1,229.71 against Chicago Trailer Transport, Inc., alone, and one for Mary V. Birkholm for $1,200 and

one for E. L. Birkholm for $2,828.20 against Bernhardt Reitz and Chicago Trailer Transport, Inc. Motions for judgment notwithstanding the verdicts in all of the actions or for new trials in two of the actions having been made by Reitz and Chicago Trailer Transport, Inc., and denied, judgments were thereupon entered upon the verdicts. Appeals to this court were taken from the judgments by Reitz and Chicago Trailer Transport, Inc.; and there were separate appeals from the judgments by Inez Carpenter Theis and Stephen Carpenter in the actions in which they were plaintiffs relating to the verdicts returned in favor of the defendant Erwin L. Birkholm, motions to set aside said verdicts in favor of Birkholm and to include him in the judgment having been made by the Carpenters and denied.

Reitz, a resident of Chicago, was the owner of a Ford pickup truck which he converted into a tractor so that he might tow and deliver house trailers for Chicago Trailer Transport, Inc., herein referred to as Transport, Inc. On May 5, 1952, as agent for Transport, Inc., he picked up a house trailer at the Glider Trailer Company in Chicago for transportation and delivery to the Produce Company in Minneapolis. The following morning at approximately 3 a. m. or a little later he started for Minneapolis from Chicago with his truck and house trailer. There were a few stops on the way. He was not operating on any schedule. He delivered the house trailer to the Produce Company in Minneapolis about 8:30 p. m. and shortly thereafter started the return trip to Chicago. On U. S. Highway No. 61 at a point four and one-half or five miles north of Hastings, Minnesota, there was a collision between the Reitz truck and an Oldsmobile owned by E. L. Birkholm and driven by his daughter, Mary V. Birkholm. At the time of the collision the Reitz truck was headed south and the Birkholm automobile, north. Inez Carpenter Theis was riding as a passenger in the Birkholm automobile. It is on account of this collision that the verdicts were returned.

The appeals by Reitz and Transport, Inc., present two questions necessary for determination here: (1) Was the evidence sufficient to justify the submission of their negligence to the jury and to support the verdicts returned against them? (2) Were E. L. Birkholm and

382

Mary V. Birkholm, under the evidence, guilty of contributory negligence as a matter of law?

A third question relating to the separate appeals of Inez Carpenter Theis and Stephen Carpenter need not be discussed or considered in view of the decision which we have reached.

■ U. S. Highway No. 61 is a two-lane road with a concrete slab 18 feet wide. Where the accident occurred the road runs in a northerly and southerly direction, and there is a rise in grade to the north from the point of impact. Approaching the scene of the accident from the north the road curves to the west. There is a clear view of the highway for at least 700 feet to the north and for about two or three blocks to the south from the point where the accident occurred. There are shoulders wide enough to park a vehicle on either side of the road. At the point where the accident occurred and for some distance north and south there are guardrails on both sides of the road.

Reitz testified that as he approached the scene of the accident he was driving approximately 40 to 45 miles an hour on his own side of the pavement; that as he started down the incline he noticed the lights of a car coming toward him from the south "mostly" on the wrong side of the road a short distance away estimated by him at 50 to 100 feet; that "all I could do is blink my lights and there was a crash"; and that the next he remembered was "waking up Friday in the hospital." The accident happened on Tuesday. He remained in the hospital for 12 days before returning home.

Mary Birkholm, who lived at Newport, Minnesota, and Inez Theis of St. Paul Park visited the mother of Inez in the hospital at Hastings on the evening of the accident. After leaving the hospital they drove around Hastings for a time and then started on their return trip to Newport, using highway No. 61. Mary was driving her father's automobile and they were proceeding in a northerly direction. The collision between the Reitz and Birkholm vehicles occurred on the curve between the guardrails. Both girls testified that they had no recollection of the happening of the accident and that the last they remembered was some distance south of the point

where the collision occurred. They said that their next recollection was in the hospital.

Although the vehicles were damaged generally the principal impact was to their right front ends. Following the collision the truck and most of the automobile were in the west lane of travel. They were close together and facing in a westerly or southwesterly direction. The rear of the truck was near the center line and there was evidence that the rear of the automobile was a foot or two to the east of the center line. The front ends of both vehicles were very close to the west guardrail. The debris was on the west side of the road, principally under and between the vehicles, but it appeared from some of the testimony that there was debris for a distance of about two feet east of the center line.

Jack Gergen and some of his fellow employees, in Gergen's automobile, were returning to their homes from their employment at the Minnesota Mining & Manufacturing Company. As they approached highway No. 61 they stopped and a vehicle proceeding south upon the highway passed in front of them. Gergen was unable to say whether the vehicle was an automobile or a truck. Two of his companions said "it was a truck." After the vehicle went by, Gergen turned south on highway No. 61. Some of the occupants of his automobile testified that they observed the taillights of the vehicle as it proceeded down the highway, but they all said that they lost sight of the lights when it reached the incline in the road ahead.

The testimony of Reitz was contradicted by testimony which he gave in a deposition some two months prior to the trial. In the deposition he said that the Birkholm car was about a block and a half or two blocks away, approaching on his side of the road, when he first saw it and that he saw it in plenty of time. At the trial, when confronted with this testimony, he admitted that he so testified and said that he continued straight ahead without veering either to the right or left and did not sound his horn or apply his brakes.

There was also impeaching evidence from several witnesses who visited Reitz in the hospital. They testified that he told them that

he was parked alongside the road asleep when the accident occurred and that he didn't know what happened. One of these witnesses, Lyle Loeding, a state highway patrolman, testified that Rietz told him that he pulled over onto the shoulder and turned his clearance lights on; that he then got out of the truck to make sure that he was far enough off the highway and that his lights were working; and that he then went to sleep in the truck. Another witness, Paul Skjervold, an investigator, testified that Reitz told him that he was asleep at the time and that he parked where he did so the truck would "slant" toward the highway and, because there was a hill there, the headlights of approaching cars would show up his truck and thus he would avoid being hit. This witness was further told that, since it was a winding road, it was a proper place to park because cars would slow down, and he stated that Reitz said "I haven't the vaguest idea what happened. If I had been awake it never would have happened."

Reitz testified that he had no recollection of these conversations in the hospital and claimed that he was unconscious until Friday. There was evidence from his attending physician that he was mentally disturbed for several days. There were, however, other matters discussed by him with these witnesses pertaining to his personal affairs aside from the accident concerning which there appears to be no dispute, which tended to refute his claim of unconsciousness. He was further impeached by his testimony at the trial that when the accident occurred he did not have a spare tire in the cab of the truck. Pictures taken of the truck after the accident showed that one was in the cab, and several witnesses testified that they saw it in the cab at the scene of the accident. Gergen said that the leg of Reitz was lodged behind it in the cab. Skjervold testified that Reitz told him that when he parked his truck on the shoulder he had a spare tire on the rear of the truck; that he removed the tire and took it inside the cab because it was only tied and not properly fastened and he was afraid that someone might steal it if he left it outside while he was sleeping; and that he laid his head back against the tire and used it in resting. The testimony showed that Reitz had

been on the road for approximately 20 hours without sleep except for two rather brief naps in the house trailer while he was waiting along the way.

Both Reitz and Mary Birkholm claim to have been on the right side of the road at the time of the accident. Each claims that the other negligently crossed over to the wrong side, thus causing the accident. Implicit in the verdict is a finding of the jury that it was Reitz who was to blame. Reitz claims that, while he was driving at 40 to 45 miles an hour on his own side of the road, the Birkholm car suddenly and within the space of 50 to 100 feet appeared in his lane of travel thereby causing the accident; that it all happened so suddenly that there was nothing he could do to avoid the collision. Respondents deny that this occurred and claim that the testimony of Reitz was so contradicted and impeached as to make it unworthy of belief.

While respondents were able to offer no direct testimony as to what occurred immediately preceding and at the time of the collision, they claim that the facts and circumstances developed at the trial and the inferences to be reasonably drawn therefrom establish that Reitz was on the wrong side of the road at the time of the collision and that he was to blame for the accident. It is their claim that there was no positive identification by the occupants of the Gergen automobile that it was the Reitz truck which passed in front of them as they waited to enter onto U. S. Highway No. 61; that even if it was the Reitz truck the evidence established, without dispute, that none of the occupants of the Gergen car saw the collision occur; and further that the jury could well find that, after the occupants of the Gergen car lost sight of the taillights of the truck as it proceeded down the incline, it passed over the center line onto Birkholm's side of the road causing the collision. They also claim that there was ample evidence given by several witnesses from which the jury could find that Reitz was parked and asleep in his truck on the shoulder of the road as the Birkholm automobile was approaching from the south; that from all the facts and circumstances, it is reasonable to infer, and the jury could find that the brakes of the

truck released because of the negligent manner in which it was parked causing it to roll down the incline and across the road into the lane of travel of the Birkholm car, thereby causing the accident.

Each point to the location of the debris, the nature of the curve, the degree of incline, the damage to the vehicles, and their location upon the highway after the accident as supporting their respective claims, and Birkholms and Theis also stress the greater weight of the Birkholm automobile as compared to the stripped-down tractor of Reitz as a further reason why the vehicles could have come to rest in the west lane of travel. These physical facts, it would seem, in some respects tend to support the claim of each. It is well recognized that many strange and unusual things are likely to occur when vehicles collide at varying speeds. What will happen is beyond certain prediction. Surprising results sometimes follow, and after collision the markings on the vehicles and on the road and the location of the cars are not positive proof of just how the accident happened. The most that can be said is that they may be helpful to the jury.[2]

While a verdict cannot rest upon speculation and conjecture it need not be established to an absolute certainty how the accident occurred and who was to blame. Proof by a fair preponderance of the evidence is all that is required. Appellants cite no cases in their brief. The case calls for the application of well-established principles of law. It is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for the jury.[3] Conflicts in evidence however sharp are to be resolved by the jury, and its verdict will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole.[4] The trier of fact, in this instance the jury, is the sole judge of the credibility of witnesses testifying in

[2]Tri-State Transfer Co. v. Nowotny, 198 Minn. 537, 270 N. W. 684; Romann v. Bender, 190 Minn. 419, 252 N. W. 80.

[3]Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Leitner v. Pacific Gamble Robinson Co. 223 Minn. 260, 26 N. W. (2d) 228.

[4]Robinson v. Butler, 234 Minn. 252, 48 N. W. (2d) 169.

relation to the issuable facts.[5] Viewing the evidence as a whole and in the light most favorable to the verdicts as we must do,[6] we conclude that a jury question was presented as to the negligence of both Reitz and Birkholm and that the verdicts which have the approval of the trial court should not be disturbed.

■ What has already been said concerning the negligence of Mary V. Birkholm applies with equal force to the claim that she was contributorily negligent and need not be repeated. It is only where the evidence of contributory negligence is so clear and conclusive as to leave no room for differences of opinion amongst reasonable men that a court may enter the province of a jury in determining this issue.[7] The issue of contributory negligence here was for the jury.

■ Inez Carpenter Theis and Stephen Carpenter, in their actions against Erwin L. Birkholm and Chicago Trailer Transport, Inc., recovered verdicts of $12,500 and $1,229.71 against Chicago Trailer Transport, Inc., alone, verdicts having been returned in favor of the defendant Erwin L. Birkholm. Mrs. Theis and Carpenter moved separately for orders setting aside the verdicts in favor of Erwin L. Birkholm and ordering and directing that he be held liable to them as a matter of law and that the verdicts in their favor be adjudged joint verdicts against him and Transport, Inc. The motions were denied and they appealed from the judgments entered in said actions. Notwithstanding their appeals, they take the position in their briefs that the judgments as entered upon the verdicts should not be disturbed. They state that their appeals were taken as a precautionary measure solely as a protection to them against the possibility of this court holding Transport, Inc., free from negligence. Since we have concluded that the issue of negligence of Birkholms and Transport, Inc., was for the jury and that the verdicts must be sustained, it

[5]In re Psychopathic Personality of Dittrich, 215 Minn. 234, 9 N. W. (2d) 510.

[6]Schleuder v. Soltow, *supra.*

[7]Bielinski v. Colwell, 242 Minn. 338, 65 N. W. (2d) 113; Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357.

follows that the trial court was right in denying the Carpenter motions and its action must be sustained.

Affirmed.

