REGNA WICK v. ST. PAUL CITY RAILWAY COMPANY.[1]

June 12, 1908.

Nos. 15,636—(174).

**Injury to Passenger.**

>The evidence does not reasonably tend to sustain the charge that respondent's fall, and consequent injuries, were caused by the violent or unusual starting of the car at the time she was stepping from the vestibule into the car proper.

Action in the district court for Ramsey county to recover $10,200 for personal injuries. The case was tried before Brill, J., and a jury which returned a verdict in favor of plaintiff for $1,250. Defendant's motion for judgment notwithstanding the verdict was denied, and its motion for a new trial was denied on condition that plaintiff consent to a reduction of the verdict to $1,000. From the order denying its motions, defendant appealed. Reversed and new trial granted.

*W. D. Dwyer* and *W. R. Duxbury*, for appellant.

*Morton Barrows* and *P. D. Scannell*, for respondent.

LEWIS, J.

The complaint alleges that March 1, 1907, respondent boarded one of appellant's street cars, and while in the act of stepping from the vestibule into the car proper appellant negligently and carelessly caused the car to start with a sudden and violent jerk, whereby, and as a direct consequence thereof, respondent with great force and violence was thrown to the floor and against the wall of the vestibule. Respondent testified as follows: That she was a married woman, about thirty five years old; that she "was just coming on the street, and stepped up the steps to go into the other steps. I stepped one foot up on the steps, just ready to step with the other foot. Then the car started and threw me backwards, out on the platform. * * * Then I got one foot on the step, and then the car started so quick, so he threw me back out on the platform." That she fell and struck her head and hip, and did not know anything more until they took her to

[1] Reported in 116 N. W. 929.

the drug store. In answer to the question: "Did the car start at that time as it usually does?" she answered, "No."

The conductor testified that he was in the front of the car collecting fares when respondent boarded the car; that he waited until she got half way into the door, then gave the signal to go on; that after that he gave his attention to collecting fares, and when he looked up the next time there were two men assisting her to a seat; that he hurried back and asked her how the accident happened—how she came to fall—and she said she slipped. Mrs. Flynn, one of the passengers, testified that she was seated on one of the cross-seats—second seat on the right-hand side; that she turned her head as respondent entered, to see who got on; that when she looked again she saw respondent about half way down, and acted as if she had stumbled; that the car started in the usual manner and without any jerk. Carrie Ellefson, a passenger occupying the seat with Mrs. Flynn, testified that she did not notice anything unusual in the manner of starting the car after respondent got on; that she was not aware of any jerk, and did not notice respondent until they took her off the car. Mertens, a passenger sitting on the last cross-seat on the left-hand side, testified that his attention was first called to the accident by some kind of a noise from an old woman sitting on the seat running lengthwise of the car; that he turned around and saw respondent lying on the platform, and went to her assistance, and with another man helped her to a seat, and then assisted the conductor in leading her to the drug store; that he noticed nothing unusual in the movements of the car—that it was going in the usual way; and when asked what called his attention to the fact that it was going in the usual manner, said "I thought of it right away as to how she could have fell."

The learned trial court instructed the jury that appellant had a right to expedite the progress of the cars and make quick passage, so far as was reasonably consistent with a due regard to the safety of its passengers, and that it was not negligence for appellant to start its car before the respondent had become seated in the car; that if the motorman started the car with a sudden and violent jerk, which threw the respondent to the floor and caused the injuries, and this was negligence, then appellant would be liable, but if, on the other hand, the car was not started with a sudden and violent jerk, which caus-

ed the respondent to fall, then appellant would not be liable; that, although respondent had not used the term "violently" or "suddenly," yet it was claimed on her part that the substance and effect of her testimony was that the car was started in a violent manner and suddenly. While the assignments of error do not directly call into question this part of the court's charge, the point is raised that the evidence is not sufficient to warrant the jury in finding that the car was started in such a violent or sudden manner as to constitute negligence on the part of appellant. In answer to the question as to whether cars did sometimes jerk in starting, the conductor answered that sometimes they did very slightly, that it depended on the motorman, and that new men were more likely to start with a jerk; that in this instance the car was started in the usual manner, and did not jerk. The motorman, who had been twelve years in appellant's employ, testified to the same effect.

The evidence shows that it was a snowy and wet day, and the witness McKinney, in answer to the question, "What did you do after you got on the car, the first thing?" said, "Swept the snow off of my shoes and leggings, then swept it out of the vestibule and off of the steps." It appears, therefore, that the floor of the vestibule was wet. It must be conceded, for the purposes of this case, that the company was not negligent in causing the car to start while respondent was in the act of passing from the vestibule into the car proper, and, taking respondent's own account of what occurred, we are to determine whether it fairly appears that she fell because of an unusual, violent, or sudden starting of the car. If, as she states, she was in the act of stepping from the vestibule into the car, with one foot on the door sill, and the other on the floor of the vestibule, a much slighter movement of the car would cause her to lose her balance than if she were standing firmly on her feet.

Respondent cannot recover from the mere fact that she happened to be in the act of stepping into the car proper at the particular moment when the car started. There is no evidence in the case tending to show that the car started in an unusual manner, except respondent's own statement that it started "so quick" that it threw her backward, etc. All the other witnesses stated that the car was operated in the usual manner, and none of them noticed any jerk, or anything

unusual. Respondent made contradictory statements as to what caused her to fall. Three days after the accident she signed the following statement: "I boarded a Rice Street car at Rice and Atwater streets going south, and had left the platform and entered the car; but the door had not been closed, and the conductor gave the signal to go ahead, and the car started as it usually does, and I fell backward out on the platform, hurting my hip and receiving other bruises about my person. I was unconscious until brought to at the drug store, where they gave me whiskey and poured water on my head. They brought me home from the drug store, where I had been taken from the car in the city ambulance." Respondent was asked to explain how she came to sign the statement, and said it was secured from her by a young man, who represented himself to be a newspaper reporter.

. It is a matter of common knowledge that street cars always start with a slight jerk, or sudden movement, and, though much depends upon the operations of the motorman, absolute evenness of movement is not attainable. So far as the record discloses, we are not satisfied that the evidence reasonably tends to show that respondent's fall was due to the unusual movement of the car. It seems quite apparent that she happened to be in an easily unbalanced position at the instant the car started, and so fell or slipped, all of which might easily have occurred while the car was being manipulated in the ordinary manner.

Reversed. New trial granted.