# MARY BELLE RHEA v. MINNEAPOLIS STREET RAIL-WAY COMPANY.[1]

June 17, 1910.

Nos. 16,659—(122).

**Negligence of carrier — directed verdict proper.**

> Plaintiff's intestate, while a passenger upon one of defendant's street cars, for some cause not clearly shown by the evidence, fell upon the floor of the car and was injured. It is *held* (1) that the trial court properly directed a verdict for defendant on the ground that there was no evidence of negligence on the part of defendant in the operation of its car or otherwise; and (2) that no presumption of negligence arose from the fact that decedent fell upon the floor of the car and was injured, there being no evidence tending to show that defendant was in any way responsible for the fall.

Action by the administratrix of the estate of Ebenezer B. Rhea to recover $5,000 for the death of her intestate, alleged to have been caused by the negligent operation of defendant's street car while decedent was a passenger thereon. The answer admitted that while a passenger decedent fell down in the car. The case was tried before Holt, J., who denied a motion to direct a verdict in favor of plaintiff, leaving the amount to the jury, and granted a motion to direct a verdict in favor of defendant. From an order denying plaintiff's motion to set aside the verdict and grant a new trial, she appealed. Affirmed.

*Wilson & Mercer,* for appellant.

*John F. Dahl, W. O. Stout,* and *D. R. Frost,* for respondent.

BROWN, J.

Action for the alleged wrongful death of plaintiff's intestate, in which a verdict was directed for defendant, and plaintiff appealed from an order denying a new trial.

[1] Reported in 126 N. W. 823.

---

[Note] As to presumption of negligence from injury to passenger, see note to Barnowski v. Helson (Mich.) 15 L. R. A. 35.

Decedent was a passenger upon one of defendant's street cars in the city of Minneapolis, and plaintiff claims, received an injury, caused by the negligence of defendant, which subsequently resulted in his death. The complaint alleges as grounds of negligence that the car upon which decedent was a passenger was overloaded and crowded; that he was unable, when first going upon the same, to obtain a seat, and was compelled to remain standing; that when the car came to a stop, soon after he took passage, to permit a passenger to alight, decedent started from the rear platform to the seat vacated, and, as he did so, defendant's servants negligently and carelessly so operated the car that it was suddenly brought to an unreasonably and dangerously quick stop, thereby causing decedent to catch his foot on the step leading into the car, throwing him violently to the floor, and severely injuring his person. Defendant denied generally its negligence, admitted that, while a passenger as alleged in the complaint, decedent "fell down in the car," but denied that the fall was caused by any act of negligence on its part. At the conclusion of the trial the court directed a verdict for defendant, on the ground that the evidence failed to make out a case of negligence.

Plaintiff contends (1) that the affirmative evidence of negligence offered on the trial was sufficient to take the case to the jury; and (2) that there is a presumption of negligence in cases of this kind, arising from the happening of an accident, which justified a submission of the case to the jury, even though the affirmative evidence on the subject be held insufficient. We are unable to concur in either of these contentions.

1. The only evidence offered by plaintiff for the purpose of showing negligence was that of the witness Williams, a passenger on the car, who was in plain view of decedent at the time he fell and was injured. He testified that decedent was upon the rear platform of the car, and that, as the conductor rang the bell as a signal to the motorman to proceed after the car had stopped to permit the passenger to alight, he started into the car, and tripped his foot, and fell down. In reference to the alleged sudden starting or jerking of the car, the witness testified: "A. As the conductor rang the bell, Mr. Rhea started to come in; that is, he stepped from the

platform when the car started. Q. Then what happened? A. He fell. Q. Did the car start suddenly? A. Well, the way cars ordinarily start; it started quickly. Q. It started quickly? A. Well, that is the ordinary way the car starts. * * * A. He started to come in as the signal was given by the conductor to start the car. Q. Did he have either foot on the inside of the car, so far as you know? A. As I remember, he just started to raise one foot in; he tripped on his foot. Q. Caught his right foot? A. Yes."

On cross-examination he testified as follows: "A. He was standing, as far as I can remember, on the left-hand side of the car going into the door. The car stopped, and I think they let off a lady passenger, and the conductor had his hands upon the bell cord ready to give the signal to go ahead, and just the moment that the conductor gave the signal to go ahead Mr. Rhea started to cross diagonally to that seat. The same time he started, the same time the bell rang, and that caused him to fall forward. Q. How long had you ridden on the street cars here in the city? A. I had been riding on the cars about that same time each morning for the last three years. Q. You say you noticed no difference in the starting of the car on this occasion than you had previously? A. No, sir; I know the car started with a kind of momentum jerk. Q. Did he fall just as he was crossing up the little step—going up from the little step? A. I was looking right at him when he fell. He had one foot clear into the car before the car started. The bell rang, and he started with the other foot, and down he went."

On redirect examination he testified: "Q. Would you say this momentum jerk was a usual thing on that part of the line? A. Well, this was a regular ordinary jerk ' " the car that starts out. Q. That they have on that line? A. Yes. Q. And have had during the three years? A. Yes." On recross-examination he testified: "Q. Did this car start any different than cars ordinarily do? A. Unless they have a new motorman on. I can always tell when they have one on. Q. Did you have any such idea that a new motorman was on? A. No, sir."

There was no other evidence upon this branch of the case, and we are clear that it wholly failed to make out a case of negligence against

defendant. The only jerk or sudden movement was that ordinarily incident to starting a car, and, whether the car was crowded, and some of the passengers remained standing, or not, defendant cannot be held liable on this showing. It was not negligence within the meaning of the law, because the usual and ordinary movement of the car.

2. It is also claimed that there is a presumption of negligence in cases of this kind arising from the happening of the accident. We are cited to no authority sustaining this position on facts like those here presented. The only fact shown by the evidence from which the presumption is claimed to arise is that decedent, while a passenger, fell upon the floor of the car and was injured. There is no claim that the car was in any way defective or out of repair, no evidence that it was improperly operated, no collision or derailment, or other attending circumstance, tending to locate responsibility for decedent's fall. Clearly, without some such showing, no presumption of defendant's negligence can be indulged. Breen v. New York Central, 109 N. Y. 297, 16 N. E. 60, 4 Am. St. 450; Wadsworth v. Boston, 182 Mass. 572, 66 N. E. 421; Mitchell v. Chicago, 51 Mich. 236, 16 N. W. 388, 47 Am. Rep. 566; Spencer v. Chicago, 105 Wis. 311, 81 N. W. 407. In other words, decedent's fall upon the floor of the car was not shown to have been occasioned by any act or omission on defendant's part, and the rule invoked does not apply. Note to Cincinnati v. Holzenkamp (74 Oh. St. 379) 113 Am. St. 980, 1000; Fewings v. Mendenhall, 88 Minn. 336, 93 N. W. 127, 60 L. R. A. 601, 97 Am. St. 519.

3. The further contention that the trial court erred in excluding certain evidence tending to show that the car on this occasion was overcrowded requires no extended mention. The only effect of that situation was that he was required to remain standing; but, whether crowded or not, no recovery can be had for an injury not resulting ·from that condition, except by bringing the case by sufficient evidence within the rules and principles of the law of negligence. And, had the evidence upon this subject been admitted, a verdict for defendant would have followed, precisely as it did without evidence, for the crowded condition of the car was not the cause of the accident.

Order affirmed.