## OLENE UNDERDAHL v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

March 1, 1935.

No. 30,107.

[1]Reported in 259 N. W. 78.

*Charles E. Carlson, Edward J. Callahan,* and *Edward J. Kotrich,*
for appellant.

*Ralph T. Boardman* and *John F. Dulebohn,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order denying her motion for new trial after an adverse verdict. She brought this action to recover damages claimed to have been suffered by her by reason of defendant's negligence while she was a passenger on a street car operated by it. The car was proceeding westerly from Washington avenue in Minneapolis. Plaintiff intended to transfer at Marquette. Before the car reached the intersection, defendant's witnesses say that about in the middle of the block, plaintiff rang the bell, signaling her desire to get off at the usual street intersection next ahead, and then got up from her seat. The testimony as to what thereafter happened is in sharp conflict. As the jury found for defendant, we must necessarily take the facts most favorable to it. The motorneer testified that before he came to the intersection he was operating the car at a rate of speed of about six or seven miles an hour when he noticed an automobile swing in front of the street car, thus compelling him to "slow down, nothing unusual about it. * * * There was no occasion for me to make an emergency stop or jerk the street car." The conductor's testimony is substantially to the same effect. Two passengers corroborate defendant's servants. What is stated relates to the question of defendant's negligence. In respect of plaintiff's contributory negligence we find considerable conflict between the parties. Here too the same rule applies respecting adoption of facts most favorable to defendant. From the testimony in behalf of defendant it appears that plaintiff got up from her seat before the intersection

was reached and stooped over while the car was in motion to pick up her handkerchief or some other small article dropped by her; that as she did so, because the car was in motion, she dropped to her knees; she then arose but did not make use of the straps immediately above her. Shortly thereafter she fell, the fall taking place before the car had come to a full stop. Mrs. Lowell, a fellow passenger, testified:

"She was right just about the center, in that front aisle, going through the front exit. When she fell either time she did not strike a seat or anything. When the car made the slow-down it was shortly after we had crossed Second avenue. We hadn't gotten very far past Second avenue when it happened. I have ridden that line most of the time for two years. I was about five minutes later than usual that morning. I should say that the car was moving the same as usual at that time of the morning with the traffic there always is about eight o'clock. We were going slow. This lady had taken a step or two and then stopped. She dropped her handkerchief. No one else who was already up was disturbed by the movement of the car. I thought the car slowed down and moved in the block quite easily compared to what it often does. It started, it seemed to me, just an ordinary start. The lady left the street car at Nicollet avenue. She wasn't assisted off. The conductor came up to the lady and asked for her name. She didn't want to give it, she said she wasn't hurt. She didn't say to the conductor or anyone that the car jerked or started or stopped with a quick or unusual jerk. Before she got up she was seated on the left side, right in front of me on the long seat. I observed her sitting there, and when she got up and she seemed frail and weakly and I was wondering if she was sick. That was before she stooped to pick up her handkerchief. I gave my name to the conductor."

Plaintiff was accustomed to the use of street cars, having made use of such means of transportation, as testified by her, all her life. This particular location was to her well known as her work brought her over this route daily.

From what has been stated it is clear that the question of defendant's negligence was for the jury, so the verdict settles that issue.

The question regarding plaintiff's contributory negligence is not so clear. The court instructed the jury respecting defendant's duty toward its passengers in substance as follows: That it is the duty of the motorneer in charge of the street car "to exercise the highest degree of care for the safety of the plaintiff while a passenger, consistent with the practical operation of that street car and in carrying on the business of his master." Further, that a motorneer operating a street car is required to exercise ordinary care for others that may be upon the street, pedestrians and vehicles, so as to avoid collisions with them; that he must have due regard and take due notice of the traffic upon the streets, and "operate the street car consistent with the traffic and at the same time exercise the degree of care for the safety of the passengers that I have just stated to you." The court further said the motorneer has a right to assume that a passenger will use ordinary care for his own safety, "but the passenger has also a right to assume that the motorneer will exercise the highest degree of care for the passenger's safety consistent with the practical operation of the street car. A passenger is required to anticipate and expect ordinary movements of the street car, but he is not required to anticipate or expect extraordinary, unnecessary or unusual movements." The court correctly instructed the jury in respect of what is contributory negligence. Plaintiff's criticism of the charge does not go to improper instruction in the sense of the language used but is based strictly upon the claim that there was no evidence in the case justifying a submission of that issue to the jury.

The charge as hereinbefore quoted and referred to is not subject to the criticism directed against it by plaintiff. Taken as a whole, the charge is eminently fair. What the court sought to bring to the attention of the jury was the relative duties of the parties directly involved. Undoubtedly the jury were familiar with street car transportation and as such well qualified by experience to determine what an ordinarily prudent person would or should do

under such circumstances as were here involved. As such, they knew from personal experience that there is a great deal of street traffic in the so-called "loop district" of Minneapolis; that automobile and other traffic is heavy and that a street car, moving as it must on rigid rails permanently fastened to the street upon which these are laid, is subject to more or less impediment in its movements and to consequent irregularity in its forward progress. We see nothing in the charge of the court imposing upon plaintiff a higher degree of care than that of ordinary care under the circumstances. That, in substance and effect, is what the court instructed the jury was the yardstick for determination of liability or lack of such.

The cases upon which plaintiff relies, McMurray v. Twin City M. B. Co. 178 Minn. 561, 228 N. W. 154, and Bakken'sen v. Minneapolis St. Ry. Co. 184 Minn. 274, 238 N. W. 489, are clearly distinguishable from the facts in the instant case. The case of Hoblit v. Minneapolis St. Ry. Co. 111 Minn. 77, 126 N. W. 407, 408, is, at least by analogy, more closely in point. A brief quotation from that case seems appropriate [111 Minn. 79]:

"It was also testified that, when plaintiff was upon the platform, she did not use her hands to steady or support herself in any way. Whether her fall was accidental, or due to her own lack of care, or to defendant's negligence, was a question of fact for the jury."

Other cases having some bearing upon this issue are Wick v. St. Paul City Ry. Co. 104 Minn. 428, 116 N. W. 929; Rhea v. Minneapolis St. Ry. Co. 111 Minn. 271, 126 N. W. 823; Leban v. Range Rapid Transit Co. 167 Minn. 40, 208 N. W. 533.

A careful review of the court's instructions, taken as a whole, leads to the view that the same were fair and just to the parties. There was nothing therein that can fairly be said to be misleading or erroneous.

Other assignments, not herein discussed, have been examined and found not to present any meritorious issues.

The order is affirmed.