416

# EVELYN WALDO v. ST. PAUL CITY RAILWAY COMPANY AND OTHERS.
# W. H. BISCOE, INDIVIDUALLY AND *d.b.a.* BISCOE TRANSFER COMPANY, AND ANOTHER, APPELLANTS.[1]

April 29, 1955.

Nos. 36,459, 36,460.

---

[1]Reported in 70 N. W. (2d) 289.

*Swensen & Miley,* for appellants Biscoe.

*Clifford W. Gardner* and *Thomas F. Burns,* for appellant Evelyn Waldo.

*Frank X. Cronan,* for respondents.

418

NELSON, JUSTICE.

This action involved a collision between a truck owned by defendant W. H. Biscoe, individually, and doing business as Biscoe Transfer Company, and defendant Robert Biscoe, operator of the truck, and a streetcar owned by defendant St. Paul City Railway Company and operated by its motorman, defendant Frank B. Whisler. The collision occurred in the intersection of Hudson Road and Maria avenue in the city of St. Paul on the forenoon of January 6, 1947. Plaintiff, Evelyn Waldo, was a regular passenger at the time of the accident and brought the action to recover for injuries alleged to have been received as a result of the collision. The jury returned a verdict for the plaintiff in the amount of $6,209 against all defendants.

The St. Paul City Railway Company and Frank B. Whisler moved for judgment notwithstanding the verdict or in the alternative for a new trial as did W. H. Biscoe, doing business as Biscoe Transfer Company, and Robert Biscoe. The trial court thereafter entered its order granting the motion of the St. Paul City Railway Company and Frank B. Whisler for judgment notwithstanding the verdict and its order denying the motion of W. H. Biscoe, doing business as Biscoe Transfer Company, and Robert Biscoe. The defendants Biscoe appeal from both orders and seek reinstatement of the verdict against the St. Paul City Railway Company and Frank B. Whisler, or a new trial. Plaintiff appeals from the order of the district court granting the motion of defendants St. Paul City Railway Company and Frank B. Whisler for judgment notwithstanding the verdict of the jury against said defendants and asks that said order for judgment notwithstanding the verdict be set aside and that this court enter its order authorizing and directing reinstatement of the verdict of the jury against said defendants.

The legal question involved is whether the evidence sustains the jury's verdict against the street railway company and its motorman and whether defendants Biscoe are entitled to judgment notwithstanding the verdict or in the alternative a new trial.

Viewing the testimony as we must on these appeals in the light most favorable to the plaintiff, we make the following recital of facts: The plaintiff boarded the streetcar involved in the collision on the morning of the accident at Earl and Hastings streets and took a seat in the last cross seat on the right side of the car. She intended to ride until time for transfer in going to her home at 1860 Clear street. The streetcar traveled northwest on Maria avenue to the intersection of Hudson Road, Wilson and Maria avenues. Hudson Road, an arterial highway or stop street, runs east and west intersected by Maria avenue running northwesterly and southeasterly and Wilson avenue running northeasterly and southwesterly. Stop signs appear at four opposite corners in this three-street intersection.

Plaintiff, testifying in her own behalf, said that the streetcar stopped for the stop sign before reaching the intersection and took on a passenger or two; that the weather was cold and the streets slippery and icy; that after the streetcar then moved ahead she saw the Biscoe truck to her right coming toward the intersection on Hudson Road, then about 100 feet east of Maria avenue; that it was coming down an incline traveling westerly at a speed of 30 miles per hour; that the streetcar was moving into the intersection when she first saw the truck; that she continued to watch the truck until within ten feet of the point of collision noting no change in its speed; and that she then closed her eyes because it was apparent that there would be a collision. She further said that the truck remained in its own lane and that the streetcar was two-thirds of the way through the intersection when she closed her eyes. She also said that the streetcar did not reduce its speed but picked up speed and was traveling from eight to ten miles per hour when the impact occurred.

Whisler, the operator of the one-man streetcar, did not appear at the trial because of ill health. His testimony came into the case by way of a deposition taken some two weeks or more before trial. His testimony was that he had worked for the street railway company for about 20 years and had been driving streetcars for 12 years and that he was familiar with the intersection in question and the condi-

tion of its streets at the time of the accident; that he stopped at the stop sign but did not take on any passengers; that he looked east and west for oncoming vehicles but saw none until he had moved forward about ten feet traveling at two to three miles per hour at which time he observed the Biscoe truck at 300 feet coming to his right from the east toward the intersection at an estimated speed of 30 miles per hour. He knew of the incline toward the east and of the slippery and icy conditions in the surrounding street area having previously traversed it that morning. The intersection which he had to cross was 96 to 100 feet wide and the streetcar 47 to 48 feet in length. It appears clear from his testimony that this one glance on his part to his right, at which time he saw the Biscoe truck approaching, was the only time he observed the truck. He did not look again. The streetcar was equipped with air brakes in good working order and these were available for use when and if necessary. His first version of the situation was that he thought that he had plenty of time to get across and then that he did have plenty of time to do so. No use was made of air brakes. During the interval he increased his speed from two to three miles per hour, going into the intersection, to eight or ten miles per hour, his speed when the accident occurred.

Robert Biscoe, testifying in behalf of Biscoes, said that he was traveling from 25 to 30 miles per hour as he approached from the east on Hudson Road; that the front end of the streetcar was just entering the intersection when he was 110 to 125 feet from it; that he applied his brakes and began to skid and slowed down to 15 miles per hour by pumping his brakes; that he kept close to the curb in his lane and sounded his horn; and that the collision occurred when the rear end of the streetcar was within ten feet of leaving the intersection.

Earl Levang, a streetcar passenger called as a witness by the street railway company, said that when the streetcar was two-thirds into the intersection he saw the truck 150 to 200 feet away; that he knew at once there would be a collision. When questioned on cross-examination as to what kind of a stop the streetcar made before starting into the intersection, Levang stated that the wheels of the streetcar may have just stopped and started again; "He might have

had the power on and released it and went"; that the streetcar stopped a second. He admitted that he had previously told a Mr. Narveson, investigating the accident for one of the parties, that he couldn't say for sure if the streetcar came to a complete stop at the intersection but that, if not, it slowed down to nearly a stop.

Florence Armbruster, another passenger called as a witness for the street railway company, said that when the streetcar was in the middle of the intersection she saw the truck 50 or more feet away and that the impact occurred when the streetcar was about three-fourths through the intersection. On cross-examination she said that she had stated recently that she couldn't remember how far away the truck was or its speed.

Another witness, Rex Sherlock, called by the street railway company, testified that he was driving westerly on Hudson Road and that the Biscoe truck had passed him in his auto about a block east of the intersection traveling 30 miles per hour; that it was downhill and slippery; that the truck started to skid when halfway down; and that he saw the truck driver was trying to stop and couldn't.

Ralph Arp was called as a witness by the defendants Biscoe. There was a marked conflict between his testimony and that of the other passenger witnesses as well as that of Whisler. He says that he sat on the very last seat on the right-hand side—the long seat—; that the streetcar did not stop at the stop sign; that he glanced out and saw the stop sign on the south side of Hudson Road at the intersection of Maria avenue; that the motorman only slowed down to four or five miles per hour and thereafter increased the speed to eight or ten miles per hour; that the streetcar had traveled onto Hudson Road approximately 25 feet when he first saw the truck; that the truck was then 50 to 100 feet away; that it seemed at the time that the truck was trying to slow down; also that it was swerving from side to side; and that the collision occurred when the streetcar was three-fourths of the way into the intersection. He estimated the speed of the truck at 25 miles per hour, and he said that he told the motorman after the accident and before leaving the streetcar that he definitely did not stop for the stop sign.

The motorman Whisler was the only witness who placed the Biscoe truck 300 feet distant when the streetcar first entered the intersection. The other witnesses, who testified as to distance upon first seeing the truck after the streetcar entered the intersection, gave their estimates ranging from 50 feet to 200 feet. All witnesses, including the plaintiff, with the exception of Ralph Arp and Robert Biscoe, testified that the streetcar stopped at the stop sign. The witness Arp was not impeached. His testimony was contradicted. It presented a sharp conflict in the testimony. The street railway company's own witness Levang waivered in his testimony as to a stop at the stop sign. Certainly the kind of stop the witness Levang testified to is not the stop at the entrance to an arterial highway or through street contemplated by the highway traffic regulation act, M. S. A. 169.20, subd. 3. Such a stop does not measure up to the requirements laid down in our decisions interpretive of that section of the statute. See, Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

■ Plaintiff was a regular passenger on the streetcar owned and operated by the street railway company when the accident occurred. Plaintiff's rights as a passenger are governed by the general law applicable in this state as between common carrier and passenger laid down in Hill v. Minneapolis St. Ry. Co. 112 Minn. 503, 506, 128 N. W. 831, 833, where this court said:

"It is the law in this state that, while a carrier of passengers is not an insurer of their safety, it is required to take every reasonable precaution for their safety. Thus, in Smith v. St. Paul City Ry. Co., 32 Minn. 1, 18 N. W. 827, 50 Am. Rep. 550, the rule is stated as follows: 'Street railway companies, as carriers of passengers for hire, are bound to exercise the highest degree of care and diligence consistent with the nature of their undertaking, and are responsible for the slightest neglect.'"

■ The Biscoes, operating the truck involved in the collision, were charged with the exercise of that reasonable care commensurate with the circumstances and the dangers involved applicable under the standard of ordinary care in negligence cases.

■ The record indicates that the trial court, both previous to the time that the case was submitted to the jury and when all defendants made motions for a directed verdict, was of the opinion that the plaintiff's testimony to the effect that the car did stop and take on a passenger or two was binding upon her. He indicated that, because of her testimony on that point and the fact that the only evidence that the streetcar did not stop at the stop sign was that of Ralph Arp, called as a witness for the Biscoes, there was insufficient evidence against the street railway company to submit the issue of negligence to a jury. In arriving at that conclusion, the trial court was in error.

In the case of McHardy v. Standard Oil Co. 231 Minn. 493, 44 N. W. (2d) 90, the appellants contended that plaintiff in that case became bound by her own testimony as to the location and movement of a truck. This court held that such contention was untenable for the reason that the rule was inapplicable where a party's testimony consists only of a narrative of events in which such party participated or which such party observed, for there is an obvious possibility that the party may be mistaken like any other witness; that in such a situation, if other witnesses give a different version of the occurrence, the party's testimony must be weighed with theirs and he will not be concluded by his own statements; that it is otherwise, however, when a party testifies to facts in regard to which he has special knowledge, such as the party's own motives, purposes, or knowledge, or his reasons for acting as he did, for then the possibility that the witness may be honestly mistaken disappears. The party's testimony must be either true or deliberately false, for to allow a contradiction of a party's own testimony under such circumstances would not be consistent with honesty and good faith. Under the conditions, whether the statements be true or false, it will bind the party as a witness, and possible contradictions by other witnesses become immaterial. A party as a witness will not be allowed to obtain a judgment based on a finding that he has perjured himself. The court cited Vondrashek v. Dignan, 200 Minn. 530, 534, 274 N. W. 609, 612, referred to the rule as stated in Harlow v. Leclair, 82 N. H.

506, 512, 136 A. 128, 131, 50 A. L. R. 973, 979, and quoted with approval from the Harlow case.

The testimony of plaintiff in the instant case was simply a narrative of her observations of the movements of the streetcar and the Biscoe truck. It did not relate to a matter peculiarly within her own knowledge. The jury could have found that she was mistaken and that other witnesses who testified were in a better position to observe the movements of both the streetcar and the truck than she was.

■ In Carpenter v. Birkholm, 242 Minn. 379, 386, 65 N. W. (2d) 250, 254, this court said that conflicts in evidence, however sharp, are to be resolved by the jury, and its verdict will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole. The trier of fact, in this instance the jury, is the sole judge of the credibility of witnesses testifying in relation to issuable facts.

Regarding conflict in the testimony and the weight of the evidence, we quote from Benson v. Northland Transp. Co. 200 Minn. 445, 450, 274 N. W. 532, 534:

"It is urged that the verdict is against the weight of the evidence in that plaintiff's case rests upon her own testimony while the defense is established by five witnesses. The number of witnesses does not establish the weight of the evidence, for 'weight of evidence is not a question of mathematics, but depends on its effect in inducing belief.' Braunschweiger v. Waits, 179 Pa. 47, 51, 36 A. 155, 156. The cases are reviewed and discussed in 4 Wigmore, Evidence (2 ed.) p. 309, § 2034, in which the author states: 'In general, the testimony of a single witness, no matter what the issue or who the person, may legally suffice as evidence upon which the jury may found a verdict.' This is the rule in Minnesota. Colvill v. St. P. & C. Ry. Co. 19 Minn. 240 (283); Farrell v. St. P. & N. P. Ry. Co. 38 Minn. 394, 38 N. W. 100; State v. Nestaval, 72 Minn. 415, 75 N. W. 725; Patzke v. M. & St. L. Ry. Co. 113 Minn. 168, 129 N. W. 124; * * * [citations from other jurisdictions omitted]. In Fengar v. Brown, 57 Conn. 60, 65, 17 A. 321, 323, holding that the testimony of one witness may establish a preponderance of the evidence, it is said: 'Evidence is to be measured by weight and not by tale.' In our own cases of State v.

Nestaval, 72 Minn. 415, 75 N. W. 725, and State v. Schmidt, 155 Minn. 440, 444, 193 N. W. 954, we held that a case is to be decided according to the weight of the evidence and not by a count of the witnesses."

■ We now come to the question whether the trial court was justified in granting judgment notwithstanding the verdict in the instant case. In LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 212, 21 N. W. (2d) 522, 526, this court stated the rule and declared the applicable law to be as follows:

"In coming to a direct consideration of the evidence disclosed by the record, it is elementary that a motion for a directed verdict, whether based on want of negligence of the defendant or on the contributory negligence of the plaintiff, admits, for the purpose of the motion, the credibility of the evidence for the adverse party and all reasonable inferences to be drawn therefrom, and such motion should be denied unless the want of negligence or the presence of contributory negligence, taking the most favorable view thereof for the plaintiff, is so clear and conclusive as to preclude an honest difference of opinion among reasonable men."[2]

This court has repeatedly held that it is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for that of a jury.

Since defendants Biscoe neither argued the question whether they were entitled to a judgment notwithstanding the verdict or in the alternative a new trial on this appeal, that appeal merits no further consideration.

We reach the conclusion that the negligence of the street railway company and its motorman Whisler was for the jury and judgment notwithstanding the verdict should not have been granted.

■ The street railway company and Whisler moved the court below for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court granted their motion for judgment

[2]See cases cited in footnote 6 of that opinion.

notwithstanding the verdict but did not rule upon their motion in the alternative for a new trial as it did in ruling upon the motion made by the defendants Biscoe. Rule 50.02(2) of the Rules of Civil Procedure provides:

"A motion for judgment notwithstanding the verdict may include in the alternative a motion for a new trial. When such alternative motion is made and the court grants the motion for judgment notwithstanding the verdict, *the court shall at the same time grant or deny the motion for a new trial,* but in such case the order on the motion for a new trial shall become effective only if and when the order granting the motion for judgment notwithstanding the verdict is reversed, vacated, or set aside." (Italics supplied.) [3]

The reversal here accordingly vacates the order as a whole, reinstating the verdict, and since the trial court did not rule on the aforesaid motion for a new trial, when the remittitur goes down the trial court will then reconsider and rule on the motion for a new trial.

Reversed as to the said order granting judgment notwithstanding the verdict and affirmed as to the order denying the alternative motion of the defendants Biscoe.

---

[3]See, 36 Minn. L. Rev. 688 and footnote 8 on same page.