ALICE M. SWANSON, SPECIAL ADMINISTRATRIX OF ESTATE OF ROSE ROSENVING, v. MINNEAPOLIS STREET RAILWAY COMPANY.

90 N. W. (2d) 514.

May 29, 1958—No. 37,317.

*David K. Wendel,* for appellant.

*Hilding Swanson, Swanson, Swanson & Swanson,* and *Richard Torrison,* for respondent.

DELL, CHIEF JUSTICE.

This action was instituted by Rose Rosenving to recover damages for personal injuries which she sustained while a passenger on one of defendant's streetcars which it is claimed was negligently operated. The case was tried to a jury which returned a verdict for the plaintiff. Defendant's alternative motion for judgment notwithstanding the verdict or for a new trial was denied and this appeal followed. The present plaintiff, special administratrix of Mrs. Rosenving's estate, was substituted as a party herein after the latter's death and following the verdict, but all references to the plaintiff in this opinion are to Mrs. Rosenving.

Plaintiff testified that she had returned by bus to Minneapolis from McGregor, Minnesota, at 11:30 p. m., December 27, 1953; that she boarded one of defendant's eastbound streetcars at the corner of Hennepin Avenue and Seventh Street; that there were no seats vacant so she remained standing in the aisle alongside one of them and grasped the iron handle at the end of it; that midway between Sixth and Seventh Streets there was a violent lurch or jerk of the streetcar which caused her to lose her grip and to fall to the floor striking her head and back on the seat. She claimed that in falling she suffered a severe contusion of her face and an aggravation of a preexisting osteo-arthritic condition and that the latter injury was permanent in nature.

Numerous assignments of error are specified in appellant's brief but only three issues merit our consideration: (1) Whether the evidence was sufficient to sustain a finding of negligence on the part of defendant; (2) whether it was sufficient to sustain a finding that plaintiff's injuries were permanent; and (3) whether it was sufficient to sustain a verdict of $6,000.

■ We, of course, consider the evidence in the light most favorable to the verdict[1] and will grant a motion for judgment notwithstanding the

---

[1] Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; Ranwick v. Nunan, 202 Minn. 415, 278 N. W. 589.

verdict only if the evidence is manifestly against it.[2] Defendant contends that since plaintiff's version of the facts of the accident is uncorroborated; that since she made certain inconsistent statements, and two witnesses gave testimony which was in some respects contradictory to hers, her testimony had no probative value and a jury finding based thereon was merely a guess and cannot be sustained. We cannot agree.

Drawing conclusions from contradictory evidence, however sharp the conflict, and determining the credibility of witnesses are for the jury unless the facts are so clear cut that reasonable men could not possibly differ regarding their interpretation.[3] One such instance was Bakken v. Lewis, 223 Minn. 329, 335, 26 N. W. (2d) 478, 481, where the uncorroborated testimony of one witness was "so unsatisfactory and contradictory and so thoroughly discredited" that it would not have supported a verdict if one had been rendered. But that description does not characterize the instant case and a directed verdict here could not have been sustained as it was in the Bakken case.

The death of the motorman deprived the jury of the benefit of any testimony which he might have given relating to the alleged lurch or jerk which plaintiff claims caused her fall. From the record it is difficult to determine whether the inconsistencies in her testimony are merely verbal errors or the result of confusion because of her limited education and the persistent and aggressive cross-examination by defense counsel or whether they are actual misstatements of the facts. Nor was the testimony of defendant's witnesses so conclusive that it discredited plaintiff's account of what happened. The weight and credibility to be accorded conflicting evidence is not to be determined by the number of witnesses which one side or the other produces before the jury.[4] There being a genuine issue of fact, it was for the jury in its deliberations to resolve any contradictions and inconsistencies and in so doing to determine what

---

[2]Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25; Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 70 N. W. (2d) 289.

[3]Schneider v. The Texas Co. 244 Minn. 131, 69 N. W. (2d) 329; Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250.

[4]Cf. Benson v. Northland Transp. Co. 200 Minn. 445, 274 N. W. 532.

weight and credibility to attach to the various witnesses' testimony.[5] There is sufficient evidence to support its finding and we are therefore compelled to accept the verdict[6] unless we are to hold as a matter of law that a violent lurch or jerk in the operation of a streetcar cannot constitute the basis for a claim of negligence. This we cannot do.

A street railway company is not an insurer of the safety of its passengers but must use every reasonable precaution for their safety. It must exercise the highest degree of care toward them consistent with its undertaking and is responsible for the slightest negligence.[7] No liability is thus incurred when a passenger, for no apparent reason, falls in a streetcar or where the fall is attributable solely to the ordinary jerks, jolts, and lurches of the vehicle when driven in the usual manner.[8] These are to be expected because they are normal incidents of operating such a vehicle and passengers are presumed to prepare for them. However, unexpected, severe, or violent lurches are not customary. Neither are passengers required to protect themselves against them nor may the street railway company insulate itself against liability to passengers who are injured thereby, solely on the theory that these are also part of the normal operation of the vehicles.[9] Questions regarding the severity of such lurches, jerks, and jolts, and whether they constitute actionable negligence will vary, of course, from case to case, and are generally for the trier of facts. This is true in the instant case and on the record before us we are of the opinion that the evidence supports the jury's finding that

---

[5]Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25; Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250; Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. (2d) 380.

[6]Peterson v. Jewel Tea Co. Inc. 228 Minn. 521, 38 N. W. (2d) 51.

[7]Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 70 N. W. (2d) 289.

[8]Rhea v. Minneapolis St. Ry. Co. 111 Minn. 271, 126 N. W. 823.

[9]Wiest v. Twin City Motor Bus Co. 236 Minn. 225, 52 N. W. (2d) 442; McMurray v. Twin City Motor Bus Co. 178 Minn. 561, 228 N. W. 154. Even Schmeltzer v. St. Paul City Ry. Co. 80 Minn. 50, 82 N. W. 1092, and Wick v. St. Paul City Ry. Co. 104 Minn. 428, 116 N. W. 929, cited by defendant, recognize the principle that violent lurches or jerks of an unusual character constitute actionable negligence. They were decided, however, upon the ground that there was insufficient evidence to indicate such a lurch or jerk. That is not the case here.

there was a violent lurch or jerk which was caused by defendant's negligence.

■ Defendant's contention that the evidence does not support a finding of permanent injury requires little comment. Each side summoned a medical witness. Defendant's witness testified that the injury was not permanent. Plaintiff's witness testified that it was permanent and that by permanent he meant that even if the aggravated osteo-arthritic condition "burned itself out," as sometimes happens, the disability would still last 10, 15, or 20 years. At the time of the injury plaintiff was 56 years old, weighed well over 200 pounds, and had a life expectancy of about 15 years. She had sustained three prior injuries to her back but they had not hindered her in her work and activities. Taking into consideration the plaintiff's age, her life expectancy, the fact that she was overweight, the "spurring" of bone which occurred in her back and knee due to the injuries received in the accident which caused much pain, and the fact that she had had no previous trouble from her arthritic condition, the jury might well have concluded that the injuries which she sustained as a result of this fall brought about her present disability and would continue to trouble her and prevent her from doing her customary work for the remainder of her life.[10]

■ Finally there is the question of damages. Defendant claims that they were excessive and were the result of passion and prejudice aroused by certain remarks of plaintiff's counsel in his final argument. Rather than analyze the entire argument, we turn to the damages themselves to determine whether they are sustained by the evidence. At the time of the injury plaintiff was employed in a laundry where she earned $42 a week. After the accident she continued working for a time until pain forced her to quit her job. She could not resume work for 64 weeks, during which period she lost $2,688 in wages. Nearly $100 in medical expenses were also incurred during this period. When she did again find employment it was not at her customary work but was doing light housework and tending children for which she was paid $20 a week, less than half of what she formerly earned. Without taking into account any award for pain and suffering to which plaintiff was undoubtedly entitled, and con-

[10]Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561.

sidering her life expectancy of over 15 years, we cannot say that the verdict of $6,000 was in any way excessive. It, therefore, could not have been the result of passion and prejudice.[11]

We do not overlook defendant's further contention that its exhibit 19, which was a trip sheet of the streetcar in which plaintiff was injured for the day of the injury, should have been received in evidence. We think that sufficient foundation was laid by counsel so that it was admissible under the Uniform Business Records as Evidence Act,[12] but, like the trial court, we doubt its relevancy and materiality. The sheet in no way discloses the exact number of passengers who were in the streetcar at a given point and could only have forced the jury to indulge in speculation as to the number of passengers who were present in the streetcar at the precise time the injury occurred. Moreover, the testimony of defendant's two witnesses also included estimates as to the number of people aboard. We think that the trip sheet, at best, would merely have been cumulative evidence and that the failure of the court to receive it was error without prejudice.

Affirmed.

---

[11]Cf. Serr v. Biwabik Concrete Aggregate Co. 202 Minn. 165, 181, 278 N. W. 355, 364, 117 A. L. R. 1009.

[12]M. S. A. 600.01 to 600.04.